**PARKER POHL** LLP

99 Park Avenue | T 212-202-8886
Suite 1510 | F 646-924-3100
New York, NY 10016 | parkerpohl.com

M. Todd Parker
todd.parker@parkerpohl.com

April 26, 2024

**Via ECF**
Honorable Katherine Polk Failla
United States District Court, SDNY
40 Foley Square, Room 2103
New York, NY 10007

      Re:    <u>Steven Milazzo v. Bank of New York Mellon</u>, Case No. 23-cv-5437 (KPF)

Dear Judge Failla:

      We represent Plaintiff Steven Milazzo in the above-referenced action and write pursuant to Rule 3(C) of the Court's Individual Practices to request a conference related to the failure of Defendant Bank of New York Mellon ("<u>BNY</u>") to produce documents and information critical to Plaintiff's case.

      Plaintiff has engaged in extensive efforts to resolve these issues, including detailing BNY's deficiencies in February 13, March 26, and April 2, 5, and 9 letters, in addition to multiple emails. Pursuant to Local Rule 37.2 and this Court's Rule 3 (C), the parties engaged in multiple meet-and-confers via Microsoft Teams on March 6, April 2, April 4, April 10, and April 19. In each instance, BNY's counsel promised that BNY is "working diligently" on producing documents and responding to issues Plaintiff raised. To be fair, the parties have worked through many disputes, and Plaintiff has significantly narrowed his requests. However, via email and further discovery responses received yesterday, BNY finally confirmed that they refuse to produce certain critical discovery and, yet again, that they will "get back to us" on two other critical issues Plaintiff has been raising for months. With a non-party deposition scheduled for May 1, Plaintiff's deposition scheduled for May 2, and depositions of BNY employees starting on May 7, BNY can delay no further.

**Summary of the Case**

      Mr. Milazzo's Amended Complaint (ECF Doc. 17) alleges that BNY discriminated against him based on age and gender when it fired him for Cause after nearly 30 exemplary years. Plaintiff also alleges that BNY's termination was retaliation for his HR complaint about being sexually harassed by a female BNY executive and that it breached BNY's contractual obligations, resulting in loss of valuable stock.

      The female executive who harassed Milazzo had multiple complaints against her by other BNY employees, upon information and belief, and was soon discovered to be engaged in a romantic relationship with her supervisor. This relationship was a clear violation of BNY's Code of Conduct, not least because she failed to report it in yearly attestations. BNY conducted a sham investigation of Milazzo's complaint, during which BNY's HR representative told Milazzo that if a male had done what the female executive did, he would be fired immediately. According to Milazzo's supervisor, BNY was also unhappy about his complaint because it exacerbated problems with the female executive. BNY imposed the most minimal discipline possible on the female executive, namely a memo of reprimand.

# PARKER POHL LLP

By stark contrast, BNY exhaustively investigated the female executive's complaint about her relationship with her supervisor (made shortly after Milazzo's complaint). The Bank discovered by searching a private phone that Milazzo had visited a strip club three years earlier on his <u>private time</u> and had been part of a <u>private</u> What's App group (in which he hardly wrote anything) that included some indelicate jokes. Even though Milazzo never had a single complaint against him at BNY, much less one about treatment of female colleagues, BNY fired Milazzo and his supervisor (who is also currently suing BNY) for Cause. BNY claimed the termination was because Milazzo had created an exclusionary workplace for women. This is demonstrably false. In addition, Plaintiff believes BNY has <u>never</u> fired an executive for such private behavior and has terminated many executives <u>without Cause</u> for egregious <u>workplace behavior involving work colleagues</u>, in contrast to Milazzo's private behavior.

As the Amended Complaint details, the real reason Milazzo was fired is clear: he was one in a long line of "old bank guys" that BNY "separated" pursuant to a systematic effort to rid the Bank of older male executives. BNY's stated reasons are plainly pretextual.

**<u>The Discovery Disputes</u>**

To prove a discrimination claim based on disparate treatment, a plaintiff must be able to show that his "employer treated [him] less favorably than a similarly situated employee outside [his] protected group." *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003). To meet that burden here, the Bank must produce, *inter alia*, three categories of documents. **First**, documents showing the ages of executive employees who were separated during the relevant time period and the ages of their replacements. **Second**, documents showing how women, including the female executive, were treated for misconduct as compared to Milazzo. **Third**, for his retaliation and additional claims, documents showing how BNY treated other employees who engaged in alleged misconduct, regardless of gender, including but not limited to others who went to strip clubs or were part of private What's App message groups.

"[C]ourts typically apply … 'liberal civil discovery rules' in employment discrimination cases, giving plaintiffs 'broad access to employers' records in an effort to document their claims.'" *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) (citation omitted). Courts regularly note that the "purpose of discovery" in disparate treatment cases "is, in part, to help identify the universe of proper comparators." *Vuona v. Merrill Lynch & Co.,* 2011 WL 5553709, *4 (S.D.N.Y. 2011) (permitting discovery of records of 30 potential comparators). The comparator documents Plaintiff seeks fit squarely within those parameters. *See, e.g., Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 686 (2d Cir. 2009) (plaintiff's prima facie case consisted of evidence that "younger, similarly-situated employees received progressive discipline for transgressions of comparable seriousness while he did not"); *Casalino v. New York State Cath. Health Plan, Inc.*, 2012 WL 1079943, *16 (S.D.N.Y. 2012) (plaintiff may demonstrate retaliatory intent through disparate treatment of other employees engaging in similar conduct); *Mazzella v. RCA Global Communs., Inc.,* 1984 WL 55541, *11 (S.D.N.Y. 1984) (ordering discovery show that "defendants' male employees were more leniently treated than female employees").

**PARKER POHL** LLP

Plaintiff has requested that BNY produce comparator documents concerning: (1) employees at or above VP level in BNY's New York office, both in the Markets group in which Milazzo worked and outside Markets; and (2) employees at or above Director level in Markets, regardless of location.

BNY has agreed to produce only comparator information within the Markets group in New York. BNY has provided no justification for this stance, which is unsupported by caselaw, particularly at the discovery stage. *See, e.g.*, *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("[t]he plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance,' but need not be 'identical'"); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (accepting as comparators employees who were of "roughly equivalent rank" but received more severance than plaintiff). BNY must produce this comparator information.

In addition, BNY refuses to produce critical additional documents, as follows:

1) Documents concerning its investigations into Milazzo's complaint about the female executive and the female executive's complaint about her supervisor. BNY does not dispute the relevance of the Milazzo investigation but claims privilege even though it appears the investigation was not conducted in anticipation of litigation. BNY remarkably claims that the female executive investigation file is not relevant, which is not supportable given Plaintiff's allegations that he was treated differently than she, including in how BNY handled the complaints. BNY's slap on the wrist of the female executive was based on its investigation into Milazzo's complaint, and its termination of Milazzo for Cause was purportedly based on its investigation of the female executive's complaint. The investigation documents are critical.

2) The personnel file of the female executive, which is indispensable for a full picture of her disciplinary record, whether she falsified her attestations, and other complaints she made to BNY, or complaints made about her (showing that she was considered a "problem" by BNY). Plaintiff has also requested her separation documents, which are necessary to show the full extent to which she was treated differently than Milazzo. BNY has produced a small handful of separation documents but refuses to produce the foregoing.

3) Similarly, BNY has produced a handful of documents concerning the supervisor's separation but has refused further production requested by Plaintiff.

4) BNY refuses to produce any age or gender-related complaints against BNY, including internal complaints and EEOC complaints.

5) As noted, BNY refuses to produce sufficient comparator information, including for individuals identified in the Amended Complaint, in Plaintiff's second set of document requests, and others who were part of the What's App message group and strip club visit that purportedly led to Milazzo's firing.

6) BNY has improperly objected to a substantial number of Plaintiff's 30(b)(6) topics consistent with its refusal to produce the forgoing categories of documents.

PARKER POHL LLP

Plaintiff respectfully submits that BNY must produce the foregoing discovery and withdraw its objections to Plaintiff's 30(b)(6) topics, which Plaintiff can set forth more fully at the requested conference. Thank you for the Court's attention to this matter.

                                                Respectfully submitted,

                                                /s/ M. Todd Parker
                                                M. Todd Parker

cc:     All Counsel via ECF