# Morgan Lewis

**Ashley Hale**
Partner
+1.212.309.6878
ashley.hale@morganlewis.com

July 12, 2024

**VIA ECF**
Hon. Katherine Polk Failla
United States District Court,
Southern District of New York
40 Foley Square, New York, NY 10007



Re:   *Steven Milazzo. v. Bank of New York Mellon Corporation*, **1:23-cv-05437-KPF**

Dear Judge Failla:

We represent Defendant Bank of New York Mellon Corporation ("BNY Mellon" or the "Bank") and write in response to Plaintiff's letter motion filed on July 2, 2024, at ECF 48.[1]

### A.  Alleged "Contradictions" In Testimony Do Not Waive Privilege

Plaintiff's description of alleged minor differences in the testimony of Adam Vos, Sarah Quarterman and Barbara Aurecchione is a red herring, as all three witnesses agree on one, critical fact – it was Adam Vos who made the decision to terminate Mr. Milazzo for cause. Vos 142:11-14; Quarterman 338:8-12; Aurecchione 242:19-243:8.[2]  It is undisputed, as admitted by Mr. Milazzo, that he attended a strip club, with male subordinates, while on a Company-paid business trip. Pl. Dep. Tr. 212:14-18. It is also undisputed, as admitted, that he participated in a male-only group text chain (among Bank colleagues) where inappropriate, derogatory, racist and sexualized messages about women were shared. Pl. Dep. Tr. 418:17-419:17; Quarterman 295:21-296:17.  It is undisputed that Mr. Vos knew those facts when he made his decision. Vos 140:14-141:9. Mr. Vos explained that, "Attending a strip club with subordinates as a senior individual is not acceptable and in violation of the [Bank] policy," and that Mr. Milazzo,"[a]s the most senior individual, going to and inviting subordinates to a strip -- strip club, is stupid, exclusionary, and a violation of this [Bank] policy." Vos 11:13-16; 54:15-19. He explained, "This activity in the day and age we're talking about, was unacceptable, and I wouldn't tolerate it. And I believe that deserved a firing for cause." Vos 117:3-10.[3]  There is no difference in testimony or any "question of fact" on any of those points. Moreover, there is nothing in the record that even suggests that Mr.

---

[1] We apologize that this letter is slightly over Your Honor's three-page limit, but we felt it necessary to cite to the record in response to each of the points made in Plaintiff's letter motion, including the claim that the attorney-client privilege has been waived.

[2] Cited excerpts from Mr. Vos' deposition transcript are attached hereto as Exhibit A, excepts from Ms. Quarterman's deposition are attached hereto as Exhibit B, excerpts from Ms. Aurecchione's deposition are attached hereto as Exhibit C, excerpts from Plaintiff's deposition are attached hereto as Exhibit D.

[3] In further explaining his decision Mr. Vos elaborated, "Attending something that is sexual in nature . . .that involves nudity, male or female, I would argue has the potential of having people feel uncomfortable and harassed. Particularly with colleagues and in a work environment, either inside or outside of the office. That behavior is long gone in the past and not acceptable today."  Vos 57:5-14.

**Morgan, Lewis & Bockius** LLP

101 Park Avenue
New York, NY 10178-0060
United States

**T** +1.212.309.6000
**F** +1.212.309.6001

July 12, 2024
Page 2

Vos was "significantly influenced by termination recommendations" from any others. Accordingly, the cases Plaintiff cites are inapposite and do not support his argument that privileged documents are "critically relevant to Plaintiff's claims." *See Terpstra v. Shoprite Supermarket, Inc.*, 2019 WL 3338267 (S.D.N.Y. 2019) (granting summary judgment where "Plaintiff was terminated for a single instance of violating company policy, which can be, and indeed was, independently assessed by the ultimate decisionmaker"); *Emmanuel v. Cushman & Wakefield, Inc.*, 2015 WL 5036970 (S.D.N.Y. 2015) (granting summary judgment where plaintiff admitted to decision maker that she fell asleep at work, even though manager (not decision maker) made allegedly discriminatory comments). Any alleged discrepancy regarding who may have made any recommendations to Mr. Vos can be resolved through cross examination at trial, rather than through attempting to pierce a fundamental privilege.

### B. The Bank Has Not Withheld Non-Privileged Documents Nor "Impliedly Waived" Any Privilege

At the direction of counsel, Ms. Barbara Aurecchione conducted a privileged investigation into the conduct of Mr. Milazzo stated above. BNY Mellon has provided Plaintiff with **all** of Ms. Aurecchione's interview notes, which contain **all of the facts** learned through the investigation. And Plaintiff then deposed Ms. Aurecchione, including about those notes. There is no support for Plaintiff's argument that he is also entitled to privileged meeting minutes or privileged summaries of any findings, which naturally contain legal advice and mental impressions. *See Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 232 (E.D.N.Y. 2019) ("Nevertheless, '[i]nterview notes and memoranda produced in the course of ... internal investigations have long been considered classic attorney work product.'")(*quoting In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015)). Moreover, other than parroting the words "substantial need," Plaintiff does not provide any support or reason that he needs the mental impressions and legal advice of lawyers, where the decision maker has explained he terminated Plaintiff based on his admitted misconduct and Plaintiff has all of the facts obtained through the investigation. *See U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998) ("bare assertion" insufficient to pierce privilege); *Carris v. First Student, Inc.*, 2018 WL 3747844, at *13 (N.D.N.Y. Aug. 7, 2018) (finding that the plaintiff's admissions that she violated company policy "alone prevent [the] [p]laintiff from establishing that the reason for termination was false").

Plaintiff is also mistaken that emails that are not to or from counsel or that copy counsel are necessarily not privileged. Emails do not need to include counsel in order to be privileged if the parties were acting at the direction of counsel in the course of a privileged investigation. *See, e.g., Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 495 (S.D.N.Y. 2019) (attorney-client privilege covers non-attorneys who were conducting an investigation under the direction of counsel); *S.E.C. v. Strauss, No.* 09 CIV. 4150 RMB/HBP, 2009 WL 3459204, at *6 (S.D.N.Y. Oct. 28, 2009) (the fact that the "non-attorneys who prepared notes of interviews were supervised by and acting at the direction of an attorney" is "sufficient to bring the work of the non-attorney staff members within the protection of the work-product doctrine.").[4]  Plaintiff deposed note-takers and email authors

---

[4] With regard to attachments on the ESI privilege log, BNY Mellon acknowledges that its ESI privilege log does contain certain privileged parent emails with unprivileged attachments.  BNY Mellon confirmed to Plaintiff that these unprivileged attachments have all been produced to Plaintiff and are only logged on the

July 12, 2024
Page 3

and none of them testified that they were acting on their own or other than at the direction of counsel.

Finally, BNY Mellon has not "impliedly waived" any privilege.  All of the holdings in cases cited by Plaintiff are premised on raising a *Faragher/Ellerth* or similar defense.[5]  As Plaintiff admits, BNY Mellon has not raised any such defense here. Plaintiff does not deny engaging in conduct the Bank deemed a violation of its policies. When it learned of this undisputed conduct, the Bank took appropriate, non-discriminatory, non-retaliatory action. Vos 140:14-141:9.  The Bank is *not* using its privileged investigation "as a shield and a sword," as evidenced by the fact it has provided Plaintiff with all of Ms. Aurecchione's notes, produced Ms. Aurecchione and three witnesses she interviewed for depositions, as well as Ms. Quarterman and Mr. Vos.  Plaintiff now has all of the factual information uncovered by the Bank when Mr. Vos decided to terminate Mr. Milazzo.[6]

---

ESI privilege log to comply with the parties' negotiated and agreed upon ESI protocol which has been ordered by this Court.  Dkt. 31.

[5] *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003), *as amended* (Nov. 25, 2003) (refusing to order disclosure of privileged material where "Doe did not place the matter *at issue,* so as to cause forfeiture of privileges by reason of unfairness, merely by stating its claim to opposing counsel, especially when the statement was accompanied by explicit insistence on retention of privileges."); *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454 (S.D.N.Y. 2019) ("finding that the Bank functionally raised a *Faragher/Ellerth* defense, which waived its attorney-client privilege"); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (finding plaintiffs "forfeited the protection of any privilege by placing these materials at issue in the case."); *Emps. Committed for Just. v. Eastman Kodak Co.*, 251 F.R.D. 101, 106-08 (W.D.N.Y. 2008) (defense was that it was the legal department that helped the company ensure that HR decisions were made without subjective bias or prejudice); *Brownell v. Roadway Package Sys.*, Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (limiting its holding to where "the employer defends itself by relying upon the reasonableness of its response to the victim's allegations" or "asserting the adequacy of its investigation as a defense to Plaintiff's allegations").
[6] Indeed, in cases where a defendant raises no *Faragher/Ellerth* affirmative defense, as here, courts routinely deny plaintiffs access to privileged documents.  *See, e.g., Geller v. N. Shore Long Island Jewish Health Sys.,* 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) ("plaintiffs cite to a number of cases in support of their motion to compel in which defendants' claim of privilege with respect to internal investigative documents was denied. However, each of the cases plaintiffs cite involves circumstances by which defendants placed their investigation at issue and were attempting to use privilege as both a sword and a shield….That is not the case here as defendants' counsel has affirmatively represented to the Court that defendants have no intention of 'using the investigation to avoid liability.") (*citing  McGrath v. Nassau Health Care Corp.*, 204 F.R.D. 240 (E.D.N.Y.2001); *Worthington v. Endee*, 177 F.R.D. 113 (N.D.N.Y.1998)); *Lakehal-Ayat v. St. John Fisher Coll.*, 2021 WL 6775441, at *3 (W.D.N.Y. Oct. 15, 2021) (no waiver of privilege where defendants are not relying on privileged communications as a claim or defense, and "[n]either the fact that the [decisionmaker] relied upon the *conclusions* reached by the investigation into Plaintiff's misconduct nor the fact that it took the [privileged] *findings* into consideration … as part of its decision making opens up to discovery privileged attorney-client communications related to the details of those underlying matters" (emphasis in original)); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 502 (S.D.N.Y. 2019) (no waiver where defendant "is not asserting an affirmative defense of any kind here, as is typically the case where the 'at issue' waiver doctrines is applied in the absence of reliance by the opposing party on attorney-client communications").

July 12, 2024
Page 4

### C.  The Bank's 30(b)(6) Deponent Was Fully Prepared To Testify

BNY Mellon said it would produce a 30(b)(6) deponent to speak to BNY Mellon's "commitment to fostering an inclusive workspace and supporting a diverse and engaged workforce," **and Plaintiff agreed.**  The Bank did not agree to produce a witness to testify about "diversity and inclusion" or "diversity targets and goals" (topics wildly overbroad and very different than what was agreed upon) because Plaintiff **never asked** for a witness to testify to such topics. Ms. Quarterman was fully prepared to speak to the Bank's commitment to fostering an inclusive workspace and supporting a diverse and engaged workforce, and cannot be faulted for the fact that Mr. Parker did not ask any questions about that topic.  Plaintiff did depose Mr. Vos, who testified that **there were no** targets or goals that applied to his Department at any time that Mr. Milazzo was there.  Vos 66:18-67:17.

Finally, Plaintiff cannot use a 30(b)(6) witness as an end-run around this Court's ruling with respect to comparators. On May 2, the Court ordered that the scope of comparators was limited to: (1) other individuals in Markets, in New York City, at the managing director level and above from 2015 through 2020 [who had] allegations of misconduct (Conf. Tr. 50:12-15, May 2, 2024, Dkt. 42.); and (2) other individuals in Markets in New York City at the managing director level and above from 2015 who made internal and EEOC complaints of alleged age and/or gender discrimination. Conf. Tr. 51:11-17, May 2, 2024, Dkt. 42.  **Ms. Quarterman was prepared to discuss all of those individuals**.  Plaintiff, unhappy with the ruling, seeks to expand the scope of proper comparators.  However, that attempt should be denied.  See *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017) ("[C]ourts should scrutinize Rule 30(b)(6) notice topics for proportionality, burden and reasonable particularity to ensure that the responding party can select and prepare the most suitable witness and so that the topics do not engender abuse of the process by either party.").

Notwithstanding Plaintiff's alleged but unsupported "information and belief" regarding whether certain individuals were properly identified as comparators under this Court's ruling, BNY Mellon has confirmed in writing and verbally to Plaintiff that the separations of David Nichols, John Wilson, Tom Carroll, Gary Johnson, Jim Malgieri, Jim McCullough, John Roy, and James Day do not meet the criteria for discovery permitted by the Court's May 2, 2024 Order.  BNY Mellon has invited Plaintiff to propound interrogatories to confirm that none of the individuals listed above fall within the parameters for comparators set by the Court. Plaintiff has not done so to date.

Respectfully submitted,

*/s/ Ashley Hale*
Ashley Hale

c:      All counsel of record (via ECF)

The Court is in receipt of the parties' letters regarding their latest discovery disputes.  (Dkt. #48, #56).

*First*, Plaintiff requests that the Court conduct an *in camera* review of certain withheld documents that, in Plaintiff's estimation, either do not appear to be privileged or for which the privilege has been impliedly waived.  Plaintiff's application is GRANTED in part.  The Court will grant limited *in camera* review of documents that Plaintiff asserts are not privileged because they were not prepared in anticipation of litigation, including meeting minutes and attachments that are summaries of the investigation's factual findings.  (*See* Ex. A, B).  Accordingly, the Court ORDERS Defendant to produce to the Court *ex parte* those documents for *in camera* review, as well as any additional information Defendant believes the Court requires to properly assess the privilege or protection inherent in each document.  Defendant shall submit the documents to the Court on or before **August 13, 2024.**  The Court DENIES Plaintiff's request as to those documents for which production is sought on the basis of implied waiver, concluding that on the record before it, the Court does not find Defendant has impliedly waived any privilege or protection.

*Second*, Plaintiff requests that the Court compel production of additional information with respect to two Rule 30(b)(6) topics for which it claims the witness was unprepared.  The Court DENIES this application.  The Court accepts Defendant's representations that Ms. Quarterman was prepared to discuss all individuals that fell within the Court's ruling with respect to comparators, and that the individuals listed do not fall within that ruling.

The Clerk of Court is directed to terminate the pending motion at docket number 48.


Dated:     July 16, 2024
           New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE