# Morgan Lewis

**Christopher A. Parlo**
Partner
+1.212.309.6062
chris.parlo@morganlewis.com

August 8, 2025

**VIA ECF**
Hon. Arun Subramanian
United States District Court, Southern District of New York
500 Pearl St., New York, NY 10007

Re:   *Steven Milazzo. v. Bank of New York Mellon Corporation*, **1:23-cv-05437-AS**

Dear Judge Subramanian:

We represent Defendant and write in response to the Court's August 1, 2025 Order (Dkt. 186).

**Question a:** BNY's counterclaim is a cause of action for both declaratory judgment and breach of contract in the alternative. The elements for a declaratory judgment include "a case of actual controversy" with a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and that "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Harleysville Ins. Co. v. Certified Testing Lab'ys., Inc.*, 681 F. Supp. 3d 155, 165 (S.D.N.Y. 2023).

The counterclaim involves an actual controversy appropriate for declaratory judgment. Whether BNY may recover the amounts awarded Plaintiff under the RSU Agreements' language is a concrete dispute involving the adverse legal relations between the parties (governed by the RSU Agreements). BNY is not seeking an amorphous declaration from the Court; rather real, substantial, and specific relief in a ruling that Plaintiff owes BNY the amounts that were awarded to Plaintiff. This is exactly the kind of controversy that is ripe for a declaratory judgment. *See VMware, Inc. v. Wood*, No. 2022-0820-PAF, 2023 WL 3477871 (Del. Ch. May 16, 2023) (granting summary judgment on declaratory judgment claim that employee was not entitled to restricted stock shares and rejecting employee's breach of contract and implied covenant claims).

To state a breach of contract claim, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by [one party]; (iii) failure of [the adverse party] to perform; and (iv) damages." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). It is undisputed that the RSU Agreements are valid contracts, BNY performed by awarding Plaintiff RSUs under and subject to the terms of the contracts, and Plaintiff failed to perform and breached the contracts by, *inter alia*, violating multiple Company policies, damaging the Company's reputation, acting inconsistently with his obligations as a manager, lying to and withholding information from Company investigators, impeding both the investigation into Mr. Spirgel and Defendant's efforts to seek discovery about his multiple strip club visits, and bringing suit regarding the RSUs. *See* Dkt. 121 at ¶¶ 3-25, 74-96, 172-186. As a result of those actions, BNY has suffered damages in the amount of the RSU distributions paid to Plaintiff from 2015 forward.

**Question b:** As outlined in BNY's August 6, 2025 letter (Dkt. 187), whether Plaintiff was terminated with or without "cause" has no bearing on whether he forfeited his unvested RSUs or is obligated to repay vested RSUs. However, to the extent the Court is inquiring about how Plaintiff's conduct constituted "Cause," Plaintiff violated multiple BNY policies, including the Code of Conduct, and engaged in misconduct which was materially injurious to BNY, including its reputation, by engaging in the behavior noted above, implicating prongs (ii), (iii) and (iv) of Section 2.1(c). Moreover, following his termination, BNY learned that Plaintiff was dishonest during his employment and therefore prong (v) of Section 2.1(c) is also implicated.

**Questions c and g:** Questions c and g are interconnected in that BNY had and has the contractual right to declare the unvested RSUs forfeited for the multiple reasons set forth in the RSU Agreements and to seek to recover the value of other RSUs, and no principle of public policy or implied covenant is applicable here which could negate those rights.

Multiple state and federal Courts have repeatedly held that where, as here, contractual language confirms one party's sole and absolute/binding discretion the covenant of good faith and fair dealing cannot negate that discretion. *See, e.g., Timian v. Johnson & Johnson,* No. 6:15-CV-06125 MAT, 2015 WL 6454766, at *9 (W.D.N.Y. Oct. 26, 2015) (dismissing breach of contract and implied covenant claims as "the terms of the LTI Plan set forth the parties' 'contractual rights and liabilities,' which may not be varied or ignored based simply on a claim that one party has exercised a contractual right but has failed to do so in good faith") *citing Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983); *Nat'l. Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y 1991, *aff'd sub nom Yaeger v. Nat'l. Westminster Bank*, 962 F.2d 1 (2d Cir. 1992) (same); *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 501 (S.D.N.Y. 2015), aff'd, 646 F. App'x 2 (2d Cir. 2016) ("It is well established that an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus."); *Smith v. Railworks Corp.*, No. 10 Civ. 3980, 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011) (same); *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 92 (2d Cir. 2010) (affirming dismissal where provision "reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what amount"). Here, BNY had sole and binding discretion under the unambiguous terms of the RSU Agreements. *See, e.g.*, Dkt. 122, Ex. ZZ at § 4.4, Exs. AAA-CCC at § 5.4 **("The Corporation shall have sole discretion to determine what constitutes grounds for forfeiture and/or repayment under this Section")** (emphasis added); *Id*. at p. 2 (" … **YOU AFFIRMATIVELY AND EXPRESSLY AGREE: (5) TO ACCEPT AS BINDING, CONCLUSIVE AND FINAL ALL DECISIONS OR INTERPRETATIONS OF THE CORPORATION UPON ANY QUESTIONS ARISING UNDER THE AGREEMENT AND THE PLAN")** (emphasis in original).

These concepts apply with equal force where a claim involves long-term incentive ("LTI") like an RSU. *See, e.g.*, *O'Shea v. Bidcom, Inc.*, 01 Civ. 3855 (WHP), 2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002) ("It is axiomatic that a promise to pay incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive."); *Gatto v. Fujitec Am., Inc.*, No. 21 Civ. 9754 (PGG), 2024 WL 4306787, at *9 (S.D.N.Y. Sept. 26, 2024) (same); *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 752-53 (1989) (affirming dismissal of breach of contract claim where discretion as to entitlement to stock awards was vested in defendant's management); *Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153 (2d Cir. 2012) (rejecting breach of contract claim based on various LTI plans, which "expressly stated that potential payments were within the sole, absolute, and

exclusive discretion of [the employer].").

If pressed to choose a best case, *Timian* is directly on point. There, the plaintiff brought breach of contract and implied covenant claims against her former employer for withholding unvested RSUs. As here, the plan awarding the RSUs granted the employer exclusive authority to determine the circumstances under which awards would vest or forfeit. 2015 WL 6454766, at *6. The court rejected plaintiff's argument that the forfeiture provisions did not apply and granted the employer's motion to dismiss. *Id*. at *10 ("Plaintiff's assertion that Defendant 'deprived [her] of … RSUs when it terminated her' … is contradicted by the express terms of the LTI Plan."). *See also Survant v. Charter Commc'ns, Inc.*, No. 3:18CV93, 2018 WL 4052166 (W.D.N.C. Aug. 24, 2018) (dismissing breach of contract claim as to RSUs).

Respectfully, *Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023) does not change this analysis. The court held that the implied covenant must arise from the contract and a promisee's reasonable expectations. Unlike here, there is no indication of what discretion Transamerica had in the structured settlement agreement. In any event, the court decided the case by deciding that there was no obligation to protect the plaintiff against his own breaches of contract. *Id*. at *670 ("To hold otherwise would create an implied fiduciary duty … to protect a plaintiff from the consequences of their own breach"). BNY had no obligation to help Milazzo avoid the breaches of policy and documents in which he engaged. Moreover, the Court cannot read into the contract Milazzo's requested implied term – "that Defendant would not terminate Plaintiff's employment or improperly deem any termination to be for 'cause'" (Am. Compl. ¶ 174), when the Agreement says the exact opposite (*see* § 4.6(e) and in later plans 5.6), and no actions here were dependent on a finding of cause (*see* § 2.1(b); 4.4(a) and (e) and in later plans 5.4). *Cordero*, at *670 ("it is not the function of the courts to remake the contract agreed to by the parties."); *Murphy*, 448 N.E.2d at *305 (refusing to find any implied covenant against an employer's right to discharge) ("The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.").

BNY acknowledges that contractual provisions against public policy may be unenforceable. However, "[o]nly a limited group of public policy interests has been identified as sufficiently fundamental to outweigh the public policy favoring freedom of contract." *159 MP Corp. v. Redbridge Bedford, LLC,* 33 N.Y.3d 353, 361 (2019) (collecting law and cases). Plaintiff has not asserted that public policy limits the RSU Agreements or identified any public policy that could be at issue. *See* Am. Compl. ¶¶ 164-77. Plaintiff has also not pled, or presented any evidence, that his unvested shares were forfeit because of his gender or age. *Id.* Plaintiff has erroneously asserted only that Defendant made a "bad faith determination" of "cause" that resulted in the forfeiture. Am. Compl. ¶¶ 167, 175. While nothing in the RSU Agreements precludes a *discrimination claim*, it is well settled that there is no public policy against a party contractually agreeing that it will not bring *a breach of contract claim* regarding forfeiture of a voluntarily accepted RSU award, as the Agreements expressly provide here. *See* Dkt. 122, Ex. ZZ at § 4.6(e), Exs. AAA-CCC at § 5.6(e) ; *Volk v. Liggett Grp. Inc.*, No. 96 CIV. 1921 SS, 1997 WL 107458, at *4 (S.D.N.Y. Mar. 11, 1997) ("Whether termed a release or a covenant not to sue, an agreement to forego potential legal claims—if otherwise validly entered into—is enforceable") (collecting cases).

*/s/ Christopher Parlo*
Christopher Parlo

c: All counsel of record (via ECF)

4