UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STEVEN MILAZZO,                                                         :
                                                                        :
                           Plaintiff,                    :
                                                                        :
     v.                                                                  :  Case No. 23-cv-5437(AS)
                                                                        :
BANK OF NEW YORK MELLON CORPORATION,                                    :
                                                                        :
                           Defendant.                    :
                                                                        :
------------------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
# TO BNY'S PRE-TRIAL MEMORANDUM

**PARKER POHL LLP**
M. Todd Parker
Shelly L. Friedland
Wendy W. Tannenbaum
99 Park Avenue, Suite 1510
New York, New York 10016
(212) 202-8886

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.   Forfeiture Of Unvested RSUs Is Not "Automatic" Under the RSU Agreements Because Plaintiff's Unvested RSUs Would Have Continued to Vest Under Sections 2.2(b) or (c) if BNY Had Fired Him Without Cause ....................................................................................1

II.  BNY's Non-Suit Clause Does Not Preclude Plaintiff's Contract Claim ...............................5

III. This Court Ruled That Defendant's Discretion Under Section 4.4(A)/5.4(A) Is Not Unlimited Under the RSU Agreements With Respect to BNY's Cause Decision.................6

IV.  This Court Ruled That Defendant's Discretion Under Section 4.4(A)/5.4(A) Is Not Unlimited with Respect to Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim, Which Defendant Improperly Seeks to Dismiss (Again) on a Motion in Limine ....................................................................................................................................8

V.   Based On Evidence Received During Pretrial Motion Practice, Plaintiff Agrees The July 15, 2020 $11,059.60 Payment Was Not Ex Gratia..................................................................9

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Absolute Resols. Invs., LLC v. Citibank, N.A.*,
  2024 WL 325110 (S.D.N.Y. 2024) ............................................................................................ 5

*American Home Assur. Co. v. Merck & Col, Inc.*,
  462 F. Supp. 2d 435 (S.D.N.Y. 2006) ....................................................................................... 8

*Aurelius Cap. Master, Ltd. v. Republic of Argentina*,
  2020 WL 70348 (S.D.N.Y. 2020) .............................................................................................. 8

*Barker v. Bancorp, Inc.*,
  2022 WL 595954 (S.D.N.Y. 2022) ............................................................................................ 4

*deCiutiis v. Nynex Corp.*,
  1996 WL 512150 (S.D.N.Y. 1996) ............................................................................................ 9

*Fishoff v. Coty Inc.*,
  634 F.3d 647 (2d Cir. 2011) ..................................................................................................... 9

*Gao v. JPMorgan Chase & Co.*,
  2015 WL 3606308 (S.D.N.Y. 2015) .......................................................................................... 5

*Giardina v. Washington Mut. Bank, FA*,
  2008 WL 11448020 (E.D.N.Y. 2008) ....................................................................................... 5

*Perks v. TD Bank, N.A.*,
  444 F. Supp. 3d 635 (S.D.N.Y. 2020) ....................................................................................... 9

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 439020 (S.D.N.Y. 2016) ............................................................................................ 5

*Southern Telecom Incorporated v. 360 Brands Group LLC*,
  520 F.Supp.3d 497 (S.D.N.Y. 2021) .................................................................................... 7, 8

*Sweetheart Cup Co. v. Buchberg Inv. Holdings, Inc.*,
  2005 WL 1515405 (S.D.N.Y. 2005) .......................................................................................... 9

*Tymshare, Inc. v. Covell*,
   727 F.2d 1145 (D.C. Cir. 1984) ............................................................................................... 8

*Welland v. Citigroup, Inc.*,
   2003 WL 22973574 (S.D.N.Y. 2003) ....................................................................................... 4

*Zest Anchors, LLC v. Biomet 3i*,
  2025 WL 1591707 (S.D.N.Y. June 5, 2025) ............................................................................ 7

Plaintiff respectfully submits this pretrial memorandum of law in opposition and response to Defendant's pretrial memorandum of law. (ECF Doc. 197)

I. **Forfeiture Of Unvested RSUs Is Not "Automatic" Under the RSU Agreements Because Plaintiff's Unvested RSUs Would Have Continued to Vest Under Sections 2.2(b) or (c) if BNY Had Fired Him Without Cause**

Defendant argues a new theory: that Plaintiff cannot bring his contractual claims or seek damages for forfeited, unvested RSUs, because "Plaintiff's RSU's automatically stopped vesting the minute he 'ceased to be continuously employed' by BNY *regardless of the reason*" under Section 2.1(b) of the RSU Agreements, "*Forfeiture upon Termination of Employment*." (BNY Brief, p. 1; emphasis in original) According to Defendant, forfeiture of unvested RSUs (and associated cessation of vesting) is "automatic" such that Defendant does not "make an affirmative decision" to forfeit the RSUs when a person stops working. "No one at BNY ha[s] to even confirm the 'reason' for [an employee's] termination" because the forfeiture occurs and "the shares automatically stop[] vesting pursuant to standing Company system operations." (*Id.*, p. 7)[1]

But the RSU Agreements themselves contradict this argument. Under certain circumstances, the forfeiture is *not* automatic, and vesting of unvested RSUs continues after termination. The text of the forfeiture provision, Section 2.1(b), provides:

> <u>Subject to Sections 2.2. and 2.3 of these Terms and Conditions</u>, if you cease to be continuously employed with your Employer prior to the date that your RSUs become fully vested, you shall cease vesting in your RSUs as of your Termination Date and any unvested RSUs immediately shall terminate and be forfeited[.]

(ECF Docs. 131-11 through 131-14, § 2.1(b) (emphasis added)) Sections 2.2 and 2.3 carve out exceptions to Section 2.1(b) when unvested RSUs are *not* forfeited (and thus continue to vest),

---

[1] Notably, BNY does not submit any affirmation or other evidence of this purported "standing Company system operation" that supposedly automatically stops the vesting of shares without human input. The affirmation BNY did submit makes clear that the cessation of vesting has exceptions and is therefore *not* automatic. (*See* ECF Doc. 197-1, ¶ 4)

1

including two that would have applied to Plaintiff had BNY not decided in bad faith to terminate him for Cause:

    ***First***, under Section 2.2(b) of the 2017, 2018, and 2019 RSU Agreements, the "*Specified Age & Years of Service Rule*," unvested RSUs do not cease to vest, and indeed, *continue vesting*, where the departing employee (i) "cease[s] to be continuously employed … <u>on or after [his] attainment of age 55</u>," and (ii) "the combination of [his] age and years of credited employment … <u>equals or exceeds 65</u> … so long as[he] fully compl[ies] with the covenants provided in Section 3 hereof." (ECF Docs. 131-11 through 131-13, § 2.2(b)) Milazzo was 56 years old when he was fired in June 2020 and had been employed with BNY since 1993 (*i.e.*, for 27 years) – thus meeting both criteria. (The age requirement changed to 60 in 2020, so Section 2.2(b) would not have applied to RSUs granted under that agreement, since Milazzo was not 60 in 2020 (*see* ECF Docs. 131-14, § 2.2(b)).) He never violated any of the restrictive covenants set forth in Section 3 of the Agreements, nor has BNY claimed that he did.

    Thus, if BNY had not fired him for Cause, Milazzo would have qualified for this "Specified Age & Years of Service Rule" exception to the automatic forfeiture triggered under Section 2.1(b) and his unvested RSUs would have continued vesting. Notably, Section 2.2(b) is *not* contingent on Milazzo's receipt of an *ex gratia* or severance payment or on signing a separation agreement and release. (*See* 2017, 2018, and 2019 RSU Agreements, Section 2.2(b)) Thus, if Milazzo can show that BNY's decision to terminate him for Cause was made in bad faith, arbitrarily, irrationally, and/or malevolently (as the Court has expressly allowed him to argue (Aug. 12, 2025

Hearing Tr. ("Tr."), 36:25-37:5, 47:11-22), he will be entitled per Section 2.2(b) to damages for his loss of 16,920 RSUs that were unvested at the time of his termination.[2]

***Second***, under Section 2.2(c), the RSUs continue to vest where a terminated employee executes a "Transition/Separation Agreement and Release" providing for "transition/separation pay," defined as "any severance, redundancy or ex-gratia compensation … that is in excess of the amount payable … on account of any notice period to which [the employee is] entitled." (ECF Docs. 131-11 through 131-14, § 2.2(c)) Plaintiff will present evidence at trial showing that if he had not been terminated for Cause, he would have been offered severance pay and signed such an agreement – thus retaining his unvested RSUs under this provision as well. (*See, e.g.*, Parker Decl., Ex. A, Quarterman Tr., 345:21-346:3 ("Mr. Milazzo had been a long serving employee in the firm, had contributed to running a very, very successful business. And I felt that providing him with his stock would require him to sign an agreement and release which would then, you know, prevent future litigation." (emphasis added))

These provisions (as well as others in Sections 2.2 and 2.3 that are inapplicable here), refute Defendant's repeated assertion that cessation of vesting was "automatic" and that "[t]he reason someone 'ceases to be continuously' employed is irrelevant." (BNY Brief, p. 6) If Milazzo had not been unlawfully terminated for Cause, Sections 2.2(b) and/or 2.2(c) would have superseded the effect of Section 2.1(b)'s automatic forfeiture provision - as noted, Section 2.1(b) specifically states

---

[2]    Plaintiff did not identify Section 2.2(b) in allegations in support of his breach of contract or breach of the covenant of good faith and fair dealing claims or in prior briefing. Therefore, like Defendant, he provides a new argument as to damages available for these claims, pursuant to the plain terms of the 2017, 2018, and 2019 RSU Agreements, if he succeeds in showing that BNY's Cause determination was in bad faith. If necessary, Plaintiff will move to conform his pleadings to the evidence to allege that he is entitled under Section 2.2(b) of the 2017, 2018, and 2019 Agreements to the unvested RSUs awarded under those Agreements that he lost because of his bad faith termination for Cause.

it is subject to Sections 2.2 and 2.3. Milazzo then would have departed the Company with the unvested RSUs. Defendant is free to argue at trial that it fired Milazzo for Cause in good faith and that Plaintiff would not have received separation pay and a severance agreement. But under the Court's previous rulings, Plaintiff can argue the opposite and that a termination without cause have caused his unvested RSUs to continue vesting under the plain terms of Sections 2.2(b) and (c).[3]

The cases Defendant cites do not dictate otherwise.

In *Welland v. Citigroup, Inc.*, 2003 WL 22973574 (S.D.N.Y. 2003), *aff'd*, 116 F. App'x 321 (2d Cir. 2004), the contract differed in one key respect from the RSU Agreements. There, the only way to avoid automatic forfeiture of unvested stock options (triggered by an employee's departure for any reason), was an affirmative decision by the applicable committee to void the forfeiture provision. The court held the failure to take a discretionary action could not provide grounds for a breach of contract claim, and thus granted summary judgment for the employer. *See Welland*, 2003 WL 22973574, *12. But the RSU Agreements here specifically provide that the automatic forfeiture will be suspended under certain circumstances identified in Sections 2.2 and 2.3. In other words, the "automatic" forfeiture is "automatically" overridden by those exceptions; no affirmative decision is required.[4] Similarly, in *Barker v. Bancorp, Inc.*, 2022 WL 595954, *9 (S.D.N.Y. 2022), the court referenced the automatic forfeiture of unvested RSUs "except for certain enumerated exceptions." The court did not address the exceptions, as presumably plaintiffs

---

<sup>3</sup> Plaintiff has conceded that he had no vested but unsettled shares, but that does not dispose of his claims under 2.2(b) and (c).

<sup>4</sup> *Welland* also illustrates a court reviewing the employer's decision to terminate an employee for cause based on an arbitrary and capricious standard, despite the employer's "sole authority" to interpret the agreement's terms in deciding whether to terminate the employee for cause. *See* 22973574, *11.

did not invoke them – unlike here, where Plaintiff's claim for damages is based on exception to the automatic rule. Similarly, in *Giardina v. Washington Mut. Bank, FA*, 2008 WL 11448020, **3-5 (E.D.N.Y. 2008), the court did not address any exceptions that would have negated the automatic forfeiture (if such exceptions existed), making that case distinguishable as well.

Defendant's repeated reliance on *Gao v. JPMorgan Chase & Co.*, 2015 WL 3606308, *4 (S.D.N.Y. 2015), is also misplaced; the case is anything but "directly on point." (BNY Brief, p. 8) As Plaintiff discussed at length in his reply memorandum on summary judgment (ECF Doc. 167, pp. 7-8), *Gao* is distinguishable on numerous grounds, including that it was decided under Delaware law and addressed a consumer credit card rewards program (not accrued employee compensation). Most importantly, the court in *Gao* rejected invocation of the implied covenant of good faith because in that case it would contradict the express language the contract. The opposite is true here, as the Court has concluded and as addressed further below in Section III below. (*See* Tr., 24:5-18, 25:14-23, 45:7-46:2)

II.     **BNY's Non-Suit Clause Does Not Preclude Plaintiff's Contract Claim**

Defendant's reliance on Section 4.6(e) to preclude Plaintiff's contract claim fails. As Plaintiff argued on summary judgment and the Court agreed, a claim for breach of the covenant of good faith cannot be waived and applies to his contract claim. (Tr., 44:17-25 ("on the breach of contract claim, Mr. Milazzo would have a claim for breach of that covenant . . .")). *See Absolute Resols. Invs., LLC v. Citibank, N.A.*, 2024 WL 325110, *15 (S.D.N.Y. 2024) (nonsensical to promise to perform duty and at same time "reserve the right to evade that duty in bad faith"); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, *8 (S.D.N.Y. 2016) (implied covenant of good faith and fair dealing not waivable under NY law). Milazzo has not forfeited his

5

ability to seek unvested RSUs as damages for his breach of contract or breach of duty of good faith claim, as discussed further in Sections III and IV below.[5]

### III. This Court Ruled That Defendant's Discretion Under Section 4.4(A)/5.4(A) Is Not Unlimited Under the RSU Agreements With Respect to BNY's Cause Decision

Contrary to the Court's clear rulings on summary judgment, Defendant argues (for the first time) that the Forfeiture and Repayment section of the RSU Agreements (Section 4.4(a) in the 2017 agreement and 5.4(a) in later agreements) gave it unfettered discretion to forfeit Milazzo's unvested RSUs in 2020 because Milazzo allegedly engaged in "conduct that is materially adverse" to the bank. (*See* BNY Brief, p. 12 (materially adverse determination is one "Plaintiff cannot challenge"); p. 13 ("as this Court has already ruled, that is not Plaintiff's call to make – it was solely BNY's")) Thus, says Defendant, Plaintiff's unvested RSUs were properly forfeited on that basis as well. (*Id.*) That argument is based on incomplete (and thus misleading) quotes from the Court's August 12, 2025 ruling and caselaw the Court cited. (*See id.*, pp. 12-13).

The Court held that BNY's "sole discretion" does, in fact, have boundaries:

> That's also the discretion language and the final and binding language that's in the contract, meaning the whole point of that is that BNY wanted to avoid a situation where a jury of 12 New Yorkers determined, as a *de novo* matter, whether something was materially injurious or adverse to the interests of the company. That's their call to make. <u>But there is a backstop, and that's what the implied covenant is; you get to try to suggest to the jury that it was arbitrary, irrational, or malevolent, meaning that they did it for the purpose of denying Mr. Milazzo the benefits of the contract.</u>

(Tr., 25:14-23; emphasis added)

> <u>The broad scope of BNY's discretion does not negate any claim for violation of the implied covenant of good faith and fair dealing.</u> The Court cites to *Zest Anchors, LLC v. Biomet 3i*, 2025 WL 1591707 at *7 (S.D.N.Y. June 5, 2025), and *Southern Telecom Incorporated v.*

---

[5] Nor does the non-suit provision of Section 4.4(a) preclude Milazzo from recovering for his unvested RSUs as damages in his discrimination and retaliation claims, as such claims are not waivable.

6

> *360 Brands Group LLC*, 520 F.Supp.3d 497, pages 506 through 509 (S.D.N.Y. 2021). Applying the test in *Southern Telecom*, the question is whether implying the covenant would (1) negate the terms of the agreement as to the alleged violator, and, if not, (2) whether it's necessary to prevent the contract from being illusory for the party claiming the violation. Here, Mr. Milazzo meets the standard. He isn't saying that BNY's determinations can be examined de novo. Although you have suggested that here in court today, that is not what the implied covenant claim would permit. The argument is, as the Court understood it prior to this hearing, but it is consistent with the standard, is more limited and consistent with the parties' agreements. <u>When a party is given some discretion under the contract, the pledge of the implied covenant includes a promise not to act arbitrarily or irrationally in exercising that discretion.</u> That's from *Southern Telecom*.

(*Id.,* at 45:7-46:2; emphasis added)

Defendant ignores this critical "backstop" in claiming it had the unfettered right to forfeit Milazzo's shares in 2020. (*See also id.,* 24:5-18 (rejecting "bank's argument that there is no implied covenant at all, meaning that the bank gets to do whatever it wants" because "*Southern Telecom* says that there is, in those situations, to preserve the rights that are in the contract, there can be an implied covenant, as there are in all New York contracts, which prevents a party from acting arbitrarily, irrationally, or to purposefully sabotage the rights of the advancing party."))

Even if BNY's discretion were unlimited (it is not), there is zero evidence in the record that BNY ever exercised its discretion by making any determination whatsoever under Section 4.4/5.4 <u>in 2020</u> that Milazzo's conduct was "materially adverse" to BNY's interests and his unvested RSUs should be forfeited on that basis. Defendant claims only that its legal team made a <u>mid-litigation</u> determination of material adversity <u>in 2024</u> (without involving any businesspeople) when it decided to bring the claw back counterclaim. (*See id.*, at 32:17-33:1) There is no testimony and no documentary evidence that it made any "material adversity" determination at all when it fired Milazzo for Cause, such that the cancellation portion of Section 4.4(a)/5.4(a) applied to cancel Milazzo's unvested RSUs. (*See* ECF Doc. 131-12, § 5.4(a) (consequences of "materially adverse"

7

determination are either cancellation of shares or clawback)) Defendant cannot claim the RSUs were properly cancelled pursuant to Section 4.4(a)/5.4(a), and its request for a ruling to that effect should be denied.

### IV. This Court Ruled That Defendant's Discretion Under Section 4.4(A)/5.4(A) Is Not Unlimited with Respect to Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim, Which Defendant Improperly Seeks to Dismiss (Again) on a Motion in Limine

Defendant once again asks the Court to ignore its ruling and dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. (BNY Brief, pp. 14-15) The Court should reject Defendant's improper request, via a pretrial memorandum rather than a motion for reconsideration, that this Court reverse its decision. *See American Home Assur. Co. v. Merck & Col, Inc.*, 462 F. Supp. 2d 435, 444 (S.D.N.Y. 2006) (declining to address motion in limine that "is in large part a disguised motion for summary judgment, or a motion for reconsideration").

Even if the request was proper, BNY's argument fails. Defendant cites (1) *Southern Telecom*, the primary case the Court relied on in ruling that Plaintiff's claim for breach of the duty of good faith and fair dealing claim <u>may proceed</u>. (*see* Section III, above), and (2) a D.C. Circuit case cited in *Southern Telecom* that stands for the proposition that permitting plaintiff to bring an implied covenant claim would <u>not</u> negate an expressly bargained-for clause that allows a party to exercise its discretion and would <u>not</u> "render the language 'sole and absolute discretion' illusory or meaningless." See *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 510 (S.D.N.Y. 2021), quoting *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C. Cir. 1984); *see also Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 2020 WL 70348, *7 (S.D.N.Y. 2020) (citing *Tymshare* for proposition that implied covenant may override discretionary contractual decision because "discretion does not equate to 'for any reason whatsoever, no matter how arbitrary or unreasonable'"); *Sweetheart Cup Co. v. Buchberg Inv. Holdings, Inc.,* 2005 WL 1515405, *2

8

(S.D.N.Y. 2005) (same); *deCiutiis v. Nynex Corp.*, 1996 WL 512150, *3 (S.D.N.Y. 1996) (same). In short, these cases go against Defendant's position.

BNY cannot get around well-established law and the Court's ruling requiring it to abide by the covenant of good faith and fair dealing applicable to the RSU Agreements, and Plaintiff may prove at trial that it violated that covenant. *See, e.g., Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) ("Under New York law, all contracts contain an implied covenant of good faith and fair dealing. 'Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion.'"), quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011).

The Court already rejected Defendant's arguments that Plaintiff's breach of the covenant of good faith and fair dealing claim (based on Defendant's bad faith termination for Cause) should be dismissed because of Defendant's so-called "unfettered discretion." The Court should do so again.

**V.     Based On Evidence Received During Pretrial Motion Practice, Plaintiff Agrees The July 15, 2020 $11,059.60 Payment Was Not Ex Gratia**

Based on evidence Defendant submitted with its pretrial submissions, Plaintiff agrees the July 15, 2020 $11,059.60 payment Milazzo received was not *ex gratia*. Plaintiff therefore withdraws his argument that his RSUs should have continued to vest under Section 2.2(c) of the RSU Agreements based on receipt of *ex gratia* compensation. Plaintiff continues to reserve, and does not waive, all other factual and legal arguments in support of his breach of contract and breach of the covenant of good faith and fair dealing claims and in support of damages related thereto, including based on any applicable provisions of the RSU Agreements or other evidence in the record or presented at trial.

<table>
<tr><td>

Dated: New York, New York
September 26, 2025

</td><td>

**PARKER POHL LLP**

By: /s/ *M. Todd Parker*
    M. Todd Parker
    Shelly L. Friedland
    Wendy W. Tannenbaum

99 Park Avenue, Suite 1510
New York, New York 10016
(212) 203-8915
todd.parker@parkerpohl.com
shelly.friedland@parkerpohl.com
wendy.tannenbaum@parkerpohl.com

*Attorneys for Plaintiff*

</td></tr>
</table>

## LOCAL CIVIL RULE 7.1(C) CERTIFICATION

I hereby certify that the foregoing Plaintiff's Memorandum of Law in Opposition to BNY's Omnibus Motion in Limine complies with the word-count limitations set forth in Local Civil Rule 7.1(c). This Brief contains 3,085 words.

<u>/s/ M. Todd Parker</u>